UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

JONATHAN ROSADO,
    Plaintiff,

v.  :  No. 5:21-cv-00515

OFFICER DENNIS SMITH and OFFICER
MATTHEW BENNICOFF
    Defendants.

## O P I N I O N
### Defendants' Motion for Summary Judgment, ECF No. 14 – Granted

**Joseph F. Leeson, Jr.**                                                         **January 26, 2022**
**United States District Judge**

### I. INTRODUCTION

Jonathan Rosado claims that Defendants used excessive force to arrest him. *See* Compl., ECF No. 2. Defendants filed a Motion for Summary Judgment, arguing that the force they used was reasonable because Rosado resisted arrest. *See* Mot., ECF No. 14. Rosado never responded to the Motion or contested Defendants' proposed undisputed material facts. Since no reasonable jury could find that Defendants used excessive force in light of the undisputed facts, the Court grants the Motion for Summary Judgment.

### II. BACKGROUND

#### a. Federal Rule of Civil Procedure 56(e)(2)

Rule 56(e)(2) of the Federal Rules of Civil Procedure provides: "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." In Defendants' Statement of Undisputed Facts, filed in support of their Motion for Summary Judgment, each fact is properly supported by a citation to the record and the cited record is attached


in the form of several exhibits. *See* Defs.' Stmt. Facts; SJ Exs., ECF Nos. 14-1 through 14-12. Rosado's deadline to respond to the Motion was December 6, 2021.

Rosado, however, did not respond to Defendants' Motion for Summary Judgment by the deadline despite this Court's pro se notice guidelines, which warned Rosado that his "case is subject to the Federal Rules of Civil Procedure and the Eastern District of Pennsylvania's Local Rules of Civil Procedure." ECF No.4. The notice also directed him that he must "file and serve a proper response to all motions within fourteen (14) days." *Id.* Nevertheless, out of an abundance of caution because Rosado is pro se, this Court sua sponte gave Rosado additional time to respond to the Motion. *See* ECF No. 18. The Court extended Rosado's deadline to respond to December 23, 2021. *See id.* Rosado's extended deadline expired more than one month ago. Yet he has not filed a response, a statement of undisputed facts, or even a single letter with the Court.

"Although [Rosado] is entitled to reasonable latitude, he must also be held accountable for his inaction." *Wade v. Wooten*, No. CIV.A. 90-2373, 1993 WL 298715, at *6 (E.D. Pa. July 30, 1993) (treating the defendant's motion for summary judgment as uncontested because the pro se plaintiff did not file a response). This Court sua sponte extended Rosado's deadline and has now given him an additional month beyond that. In that time, Rosado could have "done as little as written a letter disputing [Defendants'] motion," but he did not. *Gay v. Wright*, No. CIV. A. 90-0770, 1990 WL 145553, at *3 (E.D. Pa. Sept. 27, 1990) (determining that it is not beyond a district court's discretion to dismiss a pro se plaintiff's claims for failing to respond to a motion for summary judgment). Even though Rosado is pro se, he is, "just like any other litigant," subject to "procedural rules designed to facilitate the just but expeditious resolution of cases." *Wade*, No. CIV.A. 90-2373, 1993 WL 298715, at *5.

Thus, consistent with Rule 56(e)(2) of the Federal Rules of Civil Procedure, the Court deems Defendants' Statement of Undisputed Facts undisputed. *See* Fed. R. Civ. P. 56(e)(2); *see also*

*Robinson v. N.J. Mercer Cnty. Vicinage - Family Div.*, 562 F. App'x 145, 147, 149 (3d Cir. 2014) (holding that the district court did not err in concluding that the defendants' material facts were undisputed where the plaintiff failed to oppose the defendants' statement of material facts); *Schuenemann v. United States*, No. 05-2565, 2006 U.S. App. LEXIS 4350, at *15 n.7 (3d Cir. 2006) (holding that the district court properly deemed the defendants' statement of facts as undisputed for purposes of deciding the motion for summary judgment where the plaintiff failed to respond to each numbered paragraph of the defendants' statement of facts).

  b.  **Undisputed Material Facts**

On May 14, 2020, Ms. Holmes called the police and reported that her boyfriend, Rosado, had assaulted her. *See id.* ¶ 4. She told the police that they were arguing about infidelity when Rosado came into the living room and started punching her in the face with a closed fist. *See id.* ¶ 5. She then fell or was thrown to the ground through a coffee table. *See id.* ¶ 6. Rosado left the home before the police arrived. *See id.* ¶ 7.

Officer Smith and Officer Bennicoff responded to the call and observed a broken coffee table and facial injuries to Ms. Holmes' eye, cheek, and nose. *See id.* ¶ 8. EMS later arrived and took Ms. Holmes for medical treatment. *See id.* ¶ 9. An arrest warrant was issued for Rosado. *See id.* ¶ 10.

One month later, on August 14, 2020, at approximately 7:00 p.m., Rosado consumed marijuana and half a pint of Hennessy alcohol while at Ms. Holmes' residence. *See id.* ¶¶ 11–12. Later that night, Rosado and Ms. Holmes got into another physical altercation. *See id.* ¶ 13. As a result of the altercation, Ms. Holmes left the residence with her daughter. *See id.* ¶ 14.

From the safety of her vehicle, Ms. Holmes called the police shortly after midnight. *See id.* ¶ 15. She reported that she was lying in bed when Rosado went through her phone, started accusing

her, and then started hitting her. *See id.* ¶ 18. She also explained that this type of incident had happened before. *See id.* ¶ 17.

While on the phone with the police, Ms. Holmes stated that she was waiting at an intersection with her daughter for police to arrive and that she believed Rosado was still in her house. *See id.* ¶ 18. Officer Bennicoff arrived and spoke with Ms. Holmes and her daughter. *See id.* ¶ 20. Ms. Holmes informed Officer Bennicoff that Rosado had hit her all over. *See id.*

Officer Bennicoff knew of Rosado based on the prior incident of violence between Rosado and Ms. Holmes. *See id.* ¶ 21. As Officer Bennicoff walked towards the house, he saw Officer Smith driving by, and he signaled to Officer Smith that he was at the house. *See id.* ¶ 22. The front door of the house was open with the screen door closed. *See id.* ¶ 23.

Officer Bennicoff observed Rosado sitting on a couch in the living room. *See id.* ¶ 24. Officer Bennicoff announced his presence and entered. *See id.* ¶ 25. He then informed Rosado that there was a warrant for his arrest and ordered Rosado to stand up and put his hands behind his back. *See id.* ¶ 26.

Rosado stood and bolted through the door, jumped off the porch, and ran down the street. *See id.* ¶ 28. Officer Bennicoff chased after him. *See id.* ¶ 29. While in pursuit, the officer yelled to Rosado multiple times, ordering him to stop, informing him that he was under arrest, and warning him that the officer would tase him if he did not stop. *See id.*

Officer Bennicoff had his taser pointed at Rosado when Rosado tripped and fell to the ground. *See id.* ¶¶ 30–31. Rosado saw Officer Bennicoff and tried to push himself up in order to continue fleeing. *See Id.* ¶ 32. Officer Bennicoff fired his taser, which hit Rosado directly in his chest. *See id.* Rosado grabbed the taser prongs and ripped them out of his chest. *See id.* ¶ 33. He then tried to flee again. *See id.* At this point, Officer Smith arrived to assist Officer Bennicoff. *See id.* ¶ 34.

Before Rosado could flee again, he was hit with a taser two more times and fell to the ground.[1] *See id.* ¶ 36–37. Both officers then jumped on top of Rosado and tried to handcuff him. *See id.* ¶ 38. Rosado still resisted arrest by trying to stand up and trying to push the officers away. *See id.* ¶ 39–40.

Finally, Officer Smith managed to place one handcuff on Rosado, but he continued to resist by pulling his hands away from the officers. *See id.* ¶ 41. During their struggle, Rosado grabbed for and placed his hand on Officer Smith's taser. *See id.* ¶ 43.

At one point, Rosado bit Officer Smith's left forearm, breaking the skin. *See id.* ¶ 44. In an attempt to force Rosado to release Officer Smith's arm, Officer Bennicoff used palm strikes against Rosado. *See id.* ¶ 45. Officer Smith ordered Rosado to stop biting and also struck the side of Rosado's head. *See id.* ¶ 46. After Rosado was finally handcuffed, backup officers from North Catasauqua Borough and Lehigh Township arrived to assist. *See id.* ¶ 49.

Northampton Regional EMS was called for Rosado and Officer Smith's arm injuries. *See id.* ¶ 50. Rosado continued to kick, so he was placed in leg shackles. *See id.* ¶ 51. He remained agitated, continued to yell, and was still uncooperative when EMS arrived. *See id.* ¶ 52. A medic tried to give Rosado an injection to calm him down, but he tried to bite the medic. *See id.* ¶ 53.

The entire interaction lasted approximately eight to twelve minutes. *See id.* ¶ 55. Both Rosado and Officer Smith were transferred to the hospital. *See id.* ¶¶ 56–57. A blood test later revealed that Rosado had a blood alcohol content of 2.14. *See id.* ¶ 58.

Rosado was charged with one count of Aggravated Assault, three counts of Criminal Attempt – Aggravated Assault, one count of Disarming a Law Enforcement Officer,

---

[1] Rosado does not know which officer tased him the second time but believes that Officer Smith tased him at least once. *See* Defs.' Stmt. Facts ¶¶ 36–37.

and one count of resisting arrest as a result of the incident. *See id.* ¶ 59.

### III.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court must consider the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### IV.     ANALYSIS

Rosado brings claims against both officers, alleging that they violated his Fourth Amendment rights by using excessive force against him.[2] *See* Compl. Defendants contend that they are entitled to summary judgment in their favor because their efforts to arrest Rosado were objectively reasonable considering his resistance.[3] *See* Mot. 7.

The Fourth Amendment provides protection against unreasonable seizures of the person. *See* U.S. CONST. amend. IV. Although officers are permitted to use force to make an arrest, the use of excessive force against a person violates their right "to be secure in their persons . . . against unreasonable searches and seizures." *Id.* Courts look at two elements to decide whether force used is excessive: (1) whether the plaintiff was seized, and (2) whether the seizure was unreasonable. *See Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004); *see also Graham v. Connor*, 490 U.S. 386, 388–96 (1989). Here, Defendants do not dispute whether Rosado was seized. Instead, they argue that his seizure was reasonable.

---

[2]     Rosado argues that the officers' use of force also violated his rights under the Eighth and Fourteenth Amendments. *See* Compl. However, the Court analyzes his claims under the Fourth Amendment only because the Supreme Court has held that all claims of excessive use of force in the context of an arrest should be analyzed under the Fourth Amendment. *See Brown v. Crawford Cty.*, No. CA 12-80, 2013 WL 411472, at *5 (W.D. Pa. Feb. 1, 2013) (quoting *Graham v. Connor*, 490 U.S. 386, 95 (1989)).

If Rosado "was a pretrial detainee at the time of the incident, his excessive force claim would be treated as a due process claim under the Fourteenth Amendment." *See Brown*, No. CA 12-80, 2013 WL 411472, at *5. If Rosado was "a convicted and sentenced inmate awaiting transfer to a state correctional institution [at the time of the incident], his excessive use of force claim would be governed by the Eighth Amendment." *Id.*

[3]     In the alternative, Defendants also argue that they are entitled to summary judgment in their favor because, as police officers, they are immune from liability for civil damages under the doctrine of qualified immunity. *See* Mot. 7. Since the Court finds that no reasonable jury could conclude that Defendants used excessive force in connection with Rosado's arrest, the Court need not address the issue of qualified immunity. *See Ferguson v. Snyder*, No. 1:04-CV-2326, 2007 WL 9759958, at *3 (M.D. Pa. Jan. 3, 2007).

However, the Court notes that the doctrine likely does apply here because there is not clearly established precedent that Defendants' use of force in this case "obviously violated a clearly established constitutional right." *Estep v. Mackey*, 639 F. App'x 870, 873–74 (3d Cir. 2016).

"Reasonableness is evaluated from the perspective of a reasonable officer on the scene." *Geist v. Ammary*, 40 F. Supp. 3d 467, 475 (E.D. Pa. 2014). The analysis "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (cleaned up). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (cleaned up). The amount of reasonable force needed to make an arrest depends on the totality of the circumstances, including: "1) the severity of the crime at issue, 2) the immediate threat to the safety of the officers or others that the suspect poses, 3) whether the suspect is resisting or evading arrest, 4) how violent or dangerous the suspect is, 5) the duration of the force, 6) whether the force was used in making an arrest, and 7) whether the suspect might be armed, and 8) the number of people with whom the police must contend." *Geist*, 40 F. Supp. 3d 467, 476.

Normally, whether force is excessive is an intensive factual analysis that is best reserved for the jury. *See id.* "Summary judgment may be possible, however, if the officer's use of force was objectively reasonable under the circumstances after all factual disputes have been resolved in favor of the plaintiff." *Id.*

    a.    **The officers' use of force against Rosado was reasonable.**

The undisputed material facts establish that the officers' use of force was reasonable in light of Rosado's resistance. No reasonable jury could find otherwise for a number of reasons.

First, the officers did not use any force whatsoever until after Rosado made a run for it. Officer Bennicoff ordered Rosado to stop running multiple times. He also warned Rosado that he would tase Rosado if he did not stop, and he saw that the officer had a taser pointed at him. After several warnings and knowing that the officer was prepared to use a taser, Rosado chose to continue fleeing. Thus, the use of a taser against Rosado at this point was not unreasonable. *See Brown v.*

*Cwynar*, 484 F. App'x 676, 681 (3d Cir. 2012) (finding that the use of taser against the arrestee was not excessive when he resisted arrest); *see also Est. of Good v. Rodriguez-Santana*, No. CV 20-1431, 2021 WL 3419479, at *7 (E.D. Pa. Aug. 5, 2021) (finding that the use of taser against a fleeing arrestee was not excessive). Rosado then removed the taser prongs and meant to continue fleeing. The initial tase was therefore insufficient to subdue Rosado. Thus, the use of a taser against Rosado at this point was not unreasonable because he continued to resist arrest. *See Wargo v. Municipality of Monroeville*, PA, 646 F. Supp. 2d 777, 787 (W.D. Pa. 2009) (determining that tasing the arrestee multiple times was not excessive because he continued to resist arrest); *see also Brown v. Cuscino*, No. CIV. A. 08-1224, 2011 WL 1085892, at *16–17 (W.D. Pa. Mar. 21, 2011), aff'd sub nom., 484 F. App'x 676 (3d Cir. 2012) (finding that tasing the arrestee multiple times was not excessive because he "was actively resisting even while he was face down on the ground"); *Wargo*, 646 F. Supp. 2d at 784 (finding that tasing the arrestee multiple times was not excessive because the initial tase was ineffective and arrestee did not obey verbal commands).

Second, Rosado continued to resist arrest throughout the encounter. Rosado was initially told to stand up because he was under arrest, but he resisted. Rosado was ordered to stop running, but he resisted. Rosado was tased, but he resisted. Rosado was tased again, but he resisted. Even with two officers on top of him trying to put him in handcuffs, he resisted. After he was finally handcuffed, Rosado still resisted by kicking. His continued resistance necessitated the attempted use of a tranquilizer to calm him down. Amazingly, he continued to resist after the EMT's arrived by trying to bite one of the medics.

Third, Rosado was an immediate threat to the safety of the officers and others.[4] During the struggle, Rosado tried to push the officers away. He also reached for and placed his hand on Officer Smith's taser. Incredibly, he bit Officer Smith on the arm hard enough to draw blood, causing a

---

[4] "Others" includes, at the very least, the medic that Rosado tried to bite.

wound that needed medical attention. In order to save his partner's arm from being further injured, Officer Bennicoff struck Rosado with the palm of his hand. It is significant, however, that Officer Bennicoff chose to use his open palm against Rosado instead of a closed fist. Striking Rosado was therefore not an excessive use of force, even if the blows were aimed at Rosado's head.[5] *See Feldman v. Cmty. Coll. of Allegheny*, 85 F. App'x 821, 826 (3d Cir. 2004) (finding that physical blows to the defendant's head was not excessive because he was resisting arrest).

Fourth, Rosado was a known dangerous and violent suspect. Upon arriving at the scene, Ms. Holmes informed Officer Bennicoff that Rosado had "hit her all over." Indeed, Officer Bennicoff was familiar with Rosado from a prior incident of violence. The officers came to the scene because of a violent domestic dispute, and Rosado had an outstanding warrant for his arrest for a separate violent domestic dispute.

Fifth, Rosado had an outstanding warrant for his arrest. The officers tried to arrest Rosado, but he resisted. The officers' force was therefore used to make an arrest.

Sixth, the officers' use of force lasted no longer than was necessary. The officers only used force because Rosado fled. They continued to use force because Rosado resisted arrest and succeeded in injuring Officer Smith. They stopped using force once Rosado was finally restrained. Once restrained, Rosado continued to be belligerent, but the officers did not continue to use force against him.

In sum, the undisputed facts here are that the officers were confronted with an intoxicated and uncooperative man in the middle of the night who had a warrant out for his arrest. *See Bornstad*

---

[5] In his Complaint, Rosado alleges that the officers kicked him and placed him in a chokehold. *See* Compl. However, Rosado cannot rely solely on allegations made in his Complaint to create an issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings."). Even if Rosado's allegations in the Complaint were taken as true, the officers' use of force would still be reasonable considering that he resisted arrest, reached for Officer Smith's taser, and bit Officer Smith on the arm.

*v. Honey Brook Twp.*, 211 F. App'x 118, 124 (3d Cir. 2007) (determining that the use of force against an arrestee under similar circumstances was not excessive). Faced with arrest, Rosado tried to run, push, kick, and chomp his way out for approximately ten whole minutes. The officers used reasonable force necessary to subdue Rosado and to protect themselves from serious injury. No reasonable jury could find otherwise under a totality of the circumstances analysis considering the undisputed material facts.

V. **CONCLUSION**

The undisputed facts show that the officers' use of force in this case was reasonable because Rosado fled, continued to resist arrest, and was an immediate threat to the officers. No reasonable jury could find that the officers use of force was excessive under the circumstances. The Court therefore enters summary judgment in Defendants' favor.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge